UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF OHIO
WESTERN DIVISION

MARY L. CHAPPEL,                               Case No. 1:09-cv-865

      Plaintiff,                                 Weber, J.
                                              Bowman, M.J.
  v.

MICHAEL J. ASTRUE,
COMMISSIONER OF SOCIAL SECURITY,

      Defendant.

**REPORT AND RECOMMENDATION**

Plaintiff Mary L. Chappel filed this Social Security appeal in order to challenge the Defendant's findings that she is not disabled. *See* 42 U.S.C. §405(g). Proceeding through counsel, Plaintiff presents four claims of error, all of which the Defendant disputes. As explained below, I conclude that the ALJ's finding of non-disability should be REVERSED, because it is not supported by substantial evidence in the administrative record.

**I. Summary of Administrative Record**

The administrative record in this case is of unusual length and complexity, containing (to date) four written decisions by two Administrative Law Judges, and encompassing nearly 1300 additional pages. Plaintiff first applied for Disability Insurance Benefits (DIB) and Supplemental Security Income (SSI), alleging disability onset dates nearly a decade ago (June 2001 and October 2001), based primarily on mental impairments (Tr. 93-95, 503-508). After a hearing, administrative law judge (ALJ) Knapp issued a decision on January 22, 2004, finding that Plaintiff was not

1

disabled. (Tr. 517-532). However, the same ALJ subsequently reopened his prior decision at Plaintiff's request, concluding in a new decision issued on February 20, 2005 that Plaintiff was disabled for a closed period, between February 2002 and August 2003, but not thereafter (Tr. 537, 543-559). Plaintiff appealed. Due to a missing hearing tape, the Appeals Council remanded for reconsideration. (Tr. 709). After a second hearing, ALJ Knapp issued a third decision dated April 7, 2006, again concluding that Plaintiff was disabled for the same closed period but not thereafter. (Tr. 709-729).

Plaintiff filed new DIB and SSI applications on March 29, 2006, alleging a disability date of October 1, 2004 based upon a combination of mental and physical impairments (Tr. 766-768, 1241-44). After Plaintiff's claims were denied initially and upon reconsideration, (Tr. 730-732, 738-40, 1246-48, 1250-52), she again requested a hearing *de novo* before an Administrative Law Judge. On June 3, 2009, an evidentiary hearing was held before ALJ Larry Temin, at which Plaintiff was represented by counsel. (Tr. 1256-93). At the hearing, ALJ Temin heard testimony from Plaintiff and from George Parsons, a vocational expert.

On July 13, 2009, ALJ Larry Temin entered his decision denying Plaintiff's DIB and SSI applications. (Tr. 19-31). The ALJ specifically found that Plaintiff's claim of disability through April 7, 2006 (the date of ALJ Knapp's last decision) was barred by the doctrine of *res judicata*, a finding that Plaintiff does not now dispute. ALJ Temin additionally concluded that Plaintiff was not disabled between April 8, 2006 and the date of his decision. The Appeals Council denied Plaintiff's request for review of ALJ

Temin's decision. (Tr. 11-15). Therefore, that decision stands as the Defendant's final determination.

The ALJ's "Findings," which represent the rationale of the decision, were as follows:

1. The claimant meets the insured status requirements of the Social Security Act through September 30, 2011.

2. The claimant engaged in substantial gainful activity from March 2006 until November 2006, but she has not engaged in substantial gainful activity thereafter (20 CFR 404.1571 *et seq.* and 416.971 *et seq.*).

    ……………………

3. The claimant has the following severe impairments: lumbosacral sprain/mild degenerative disc disease, mild carpal tunnel syndrome, major depressive disorder, an anxiety disorder, and a personality disorder not otherwise specified (20 CFR 404.1520(c) and 416.920(c)).

    ……………………..

4. The claimant does not have an impairment or combination of impairments that meets or medically equals one of the listed impairments in 20 CFR Part 404, Subpart P, Appendix 1 (20 CFR 404.1525, 404.1526, 416.925, and 416.926).

    ………………………

5. After careful consideration of the entire record, the undersigned finds that the claimant has the residual functional capacity to perform sedentary work as defined in 20 CFR 404.1567(a) and 416.967(a). Specifically, the claimant can perform the requirements of work activity except as follows: she can lift/carry/push/pull a limit of 10 pounds occasionally and five pounds frequently. She can stand and/or walk a limit of two hours in an eight-hour workday. She can stand and/or walk a limit of 30 minutes at a time, then must be able to sit for five minutes. She can sit a limit f six hours in an eight-hour workday. She can sit a limit of 45 minutes at a time, then must be able to stand for two to five minutes. The claimant can only occasionally stoop, kneel, crouch, and climb heights, work around hazardous machinery, or perform firm, forceful graphing with either hand beyond the limits of 10 pounds occasionally and 5 pounds frequently. She can only frequently perform fingering (i.e., picking, pinching, or otherwise working primarily with fingers rather than with the whole hand or arm)

      bilaterally. She is able to remember and carry out only short and simple instructions. Her job should not require more than ordinary and routine changes in work setting or duties. The claimant is able to make only simple work-related decisions.

      ………………………..

6.     The claimant is unable to perform any past relevant work (20 CFR 404.1565 and 416.965).

      …………………………

7.     The claimant was born on February 10, 1965, was 39 years old, which is defined as a younger individual age 18-44, on the alleged disability onset date. (20 CFR 404.1563 and 416.963).

8.     The claimant has at least a high school education and is able to communicate in English (20 CFR 404.1564 and 416.964).

9.     Transferability of job skills is not material to the determination of disability because using the Medical-Vocational Rules as a framework supports a finding that the claimant is "not disabled," whether or not the claimant has transferable job skills (See SSR 82-41 and 20 CFR Part 404, Subpart P, Appendix 2).

10.    Considering the claimant's age, education, work experience, and residual functional capacity, there are jobs that exist in significant numbers in the national economy that the claimant can perform (20 CFR 404.1569, 404.1569a, 416.969 and 416.969a).

      ………………………...

11.    The claimant has not been under a disability, as defined in the Social Security Act, from October 1, 2004 through the date of this decision (20 CFR 404.1520(g) and 416.920(g)).

(Tr. 22-31). Thus, the ALJ concluded that Plaintiff was not under disability as defined by the Social Security Regulations and was not entitled to SSI or DIB.

On appeal to this court, Plaintiff maintains that the ALJ erred by: 1) improperly dismissing the findings of three treating physicians; 2) failing to provide "good reasons" for rejecting disability opinions of treatment providers; 3) inadequately assessing Plaintiff's pain and credibility; and 4) improperly relying on erroneous testimony by a

vocational expert. Because they are closely related, the first two assignments of error will be discussed together. I conclude that the first two errors, as well as the fourth listed error, all require remand under Sentence Four of 42 U.S.C. §405(g).

## II. Analysis

### A. Judicial Standard of Review

To be eligible for SSI or DIB a claimant must be under a "disability" within the definition of the Social Security Act. *See* 42 U.S.C. §§423(a), (d), 1382c(a). The definition of the term "disability" is essentially the same for both DIB and SSI. *See Bowen v. City of New York*, 476 U.S. 467, 469-70 (1986). Narrowed to its statutory meaning, a "disability" includes only physical or mental impairments that are both "medically determinable" and severe enough to prevent the applicant from (1) performing his or her past job and (2) engaging in "substantial gainful activity" that is available in the regional or national economies. *See Bowen*, 476 U.S. at 469-70 (1986).

When a court is asked to review the Commissioner's denial of benefits, the court's first inquiry is to determine whether the ALJ's non-disability finding is supported by substantial evidence. 42 U.S.C. § 405(g). Substantial evidence is "such relevant evidence as a reasonable mind might accept as adequate to support a conclusion." *Richardson v. Perales*, 402 U.S. 389, 401 (1971) (additional citation and internal quotation omitted). In conducting this review, the court should consider the record as a whole. *Hephner v. Mathews*, 574 F.2d 359, 362 (6th Cir. 1978). If substantial evidence supports the ALJ's denial of benefits, then that finding must be affirmed, even if substantial evidence also exists in the record to support a finding of disability. *Felisky v. Bowen*, 35 F.3d 1027, 1035 (6th Cir. 1994). As the Sixth Circuit has explained:

5

> The Secretary's findings are not subject to reversal merely because substantial evidence exists in the record to support a different conclusion . . . . The substantial evidence standard presupposes that there is a 'zone of choice' within which the Secretary may proceed without interference from the courts. If the Secretary's decision is supported by substantial evidence, a reviewing court must affirm.

*Id.* (citations omitted).

In considering an application for disability benefits, the Social Security Agency is guided by the following sequential benefits analysis: at Step 1, the Commissioner asks if the claimant is still performing substantial gainful activity; at Step 2, the Commissioner determines if one or more of the claimant's impairments are "severe;" at Step 3, the Commissioner analyzes whether the claimant's impairments, singly or in combination, meet or equal a Listing in the Listing of Impairments; at Step 4, the Commissioner determines whether or not the claimant can still perform his or her past relevant work; and finally, at Step 5, if it is established that claimant can no longer perform her past relevant work, the burden of proof shifts to the agency to determine whether a significant number of other jobs which the claimant can perform exist in the national economy. *See Combs v. Commissioner of Soc. Sec.*, 459 F.3d 640, 643 (6th Cir. 2006); 20 C.F.R. §§404.1520, 416.920.

A plaintiff bears the ultimate burden to prove by sufficient evidence that he or she is entitled to disability benefits. 20 C.F.R. § 404.1512(a). A claimant seeking benefits must present sufficient evidence to show that, during the relevant time period, she suffered an impairment, or combination of impairments, expected to last at least twelve months, that left her unable to perform any job in the national economy. 42 U.S.C. § 423(d)(1)(A). In this case, Plaintiff alleges that the three identified errors at the fifth step of the sequential analysis require this court to reverse the Commissioner's decision.

6

**B. The ALJ's Rejection of Treating Physician's Opinions**

In related first and second assignments of error, Plaintiff complains that the ALJ improperly rejected the opinions of treating physicians, and failed to provide "good reasons" for his rejection of those opinions. Plaintiff argues specifically that the ALJ erred by rejecting the residual functional capacity forms completed by three treating physicians: Dr. Blatman, Dr. Atterberry, and Dr. Niebur, and by adopting instead the residual functional capacity assessments of two consulting physicians who performed paper reviews of the record (without examining Plaintiff) in July 2006 and June 2007. 20 C.F.R. § 404.1527(d)(2) provides: "[i]f we find that a treating source's opinion on the issue(s) of the nature and severity of your impairment(s) is well-supported by medically acceptable clinical and laboratory diagnostic techniques and is not inconsistent with the other substantial evidence in your case record, we will give it controlling weight." *Id.*

**1. Dr. Blatman**

Plaintiff suffered a back injury in 2005 from which she has never fully recovered. She began treatment at the Blatman Pain Clinic in August 2006 - notably, after the review of Plaintiff's records by the consulting physicians on whom the ALJ relied to calculate Plaintiff's residual functional assessment ("RFC"). (Tr. 23). As a treating physician, Dr. Blatman completed an assessment of Plaintiff's "work-related abilities and limitations" on June 2, 2009. (Tr. 1237-1240).[1] In his assessment, Dr. Blatman opined that Plaintiff would be required to lie down 4-5 hours of an 8 hour workday, could sit no more than 3-4 hours in a workday, and could stand or walk no more than 2-3 hours, requiring the ability to change positions at least every twenty minutes. (Tr. 1237). In

---

[1] Because pages 1238-1240 were inadvertently omitted from the transcript originally filed, they were filed as a supplemental transcript on May 21, 2010.

7

addition to these severe postural limitations, Dr. Blatman imposed significant lifting and carrying restrictions, and opined that Plaintiff was unable to push or pull any weight at any time, and could reach 10-15 minutes at one time for a total of no more than 2 hours in an 8-hour day.  Dr. Blatman additionally suggested that Plaintiff retains no ability to use her hands to seize, hold, grasp, turn, or to do work that requires any fingering, due to her carpal tunnel syndrome.  (Tr. at 1227-1228).  He stated that Plaintiff cannot stoop for any amount of time due to pain, and that she could kneel and/or crouch only once or twice a day "for few seconds" due to pain.  (Id. At 1229).  Finally, Dr. Blatman opined that Plaintiff would be absent from work more than four days per month based upon her "impairments or treatment."  (Id.).  Despite all of these severe limitations, Dr. Blatman left entirely blank the section of the form that asked him to relate the medical history, clinical or laboratory findings, or diagnoses that he found supported the functional limitations he described. (Id. at 1240).

     The ALJ appears to have rejected in its entirety the functional assessment completed by Dr. Blatman, stating: "This assessment is unsupported by the evidence and there is nothing in the treating records from Dr. Blatman to support the very limited levels of activities he finds the claimant can do." (Tr. 29).  The ALJ's decision suggests that Dr. Blatman's assessment: 1) was unsupported by clinical, laboratory, or other objective medical evidence in the record; 2) was unsupported by any notes in Dr. Blatman's own treating records; and 3) was limited by Dr. Blatman's failure to perform a full physical examination of Plaintiff.  (*Id*.).

     Plaintiff argues that the ALJ should not have rejected Dr. Blatman's assessment because it was based upon a three-year treating relationship, as well as objective

8

evidence of physical findings reflected by MRI, EMG (for carpal tunnel syndrome) and multiple physical examinations, including restricted range of motion, spasms, and myofascial trigger points. Citing *Blakely v. Commissioner of Social Security*, 581 F.3d 399, 408-409 (6th Cir. 2009), Plaintiff additionally argues that the ALJ's failure to more specifically articulate the weight that he gave to Dr. Blatman's opinions was an error of law requiring remand.

In *Blakely*, the ALJ rejected a functional assessment by a treating physician that the plaintiff was restricted to lifting no more than 20 pounds, with no overhead lifting on a repetitive basis, determining instead that the plaintiff could lift 50 pounds occasionally and 25 pounds frequently. *Id*., 581 F.3d at 404.  In explaining his decision, the ALJ strongly implied that the treating physician's opinion was influenced by improper motives, such as the doctor's sympathy for the plaintiff and/or the fact that "patients can be quite insistent and demanding in seeking supportive notes or reports." *Id.* at 408. The ALJ in *Blakely* conceded that he could not "confirm the presence of such motives" but noted that "they are more likely in situations where the opinion in question departs substantially from the rest of the evidence of record." *Id.*  The Sixth Circuit reversed and remanded based upon the ALJ's failure to provide reasons "sufficiently specific to make clear to any subsequent reviewers the *weight* the adjudicator gave to the treating source's medical opinion" as well as the reasons for that weight. *Id.* at 407 (citing Soc. Sec. Rul. 96-2p, emphasis added and additional citation omitted).  The appellate court stated that even assuming that the ALJ correctly determined that the treating physician's opinion should be discredited, he committed reversible error by failing to explicitly state the weight he accorded to the opinions. *Id.* at 408.

9

*Blakely* is controlling and requires remand in this case. Although the ALJ apparently adopted most (but not all) of the limitations suggested by the non-examining consulting sources, those sources offered their opinions prior to the time that Dr. Blatman began his three-year and ongoing treatment relationship with Plaintiff. When an ALJ rejects the opinions of a treating source who has a lengthy relationship with a plaintiff in favor of a non-examining consulting source, the Sixth Circuit requires "some indication that the ALJ at least considered these facts before giving greater weight to an opinion that is not 'based on a review of a complete case record.'" *Blakely*, 581 F.3d at 409 (*quoting Fisk v. Astrue*, 253 Fed.Appx. 580, 585 (6th Cir. 2007)).

### 2. Dr. Atterbury and Dr. Neibur

For similar reasons, the ALJ erred in rejecting the opinions of Drs. Atterbury and Niebur without adequate explanation.

Dr. Atterbury, another treating physician, also completed an assessment of Plaintiff's physical limitations. Dr. Atterbury treated Plaintiff as a primary care provider from July 2005 through 2009,[2] and completed an RFC assessment on May 1, 2009. Although the ALJ ultimately determined some postural limitations greater than those reflected on the assessment completed by Dr. Atterbury, the ALJ also rejected some limitations found by Dr. Atterbury. The ALJ's only explanation was: "A statement from Dr. Atterbury is not supported by treatment records, except for the restrictions on lifting." (Tr. 29). Contrary to the ALJ's stated acceptance of Dr. Atterbury's restrictions on lifting, which limited Plaintiff to no more than 3-5 pounds no more than 3 hours per day,

---

[2] Defendant notes, as did the ALJ, that Dr. Atterbury most frequently treated Plaintiff for gynecological ailments. (Tr. 29). However, medical records reflect treatment for a broad spectrum of complaints typical of primary care practice.

10

with no repetitive lifting (Tr. 1122-1123), the ALJ actually found Plaintiff to be capable of lifting 10 pounds occasionally and 5 pounds frequently. (Tr. 27). This inconsistency alone requires remand for further explanation. In addition, it is obvious that neither Dr. Atterbury's RFC assessment nor the majority of her records were reviewed by the consulting physicians when they completed the assessments on which the ALJ more strongly relied to determine Plaintiff's RFC.

Dr. Neibur has been Plaintiff's treating psychiatrist since March of 2007. It bears repeating that Plaintiff has a lengthy psychiatric history, and that her prior closed period of disability was based exclusively on psychiatric symptoms. Because the consulting physicians' respective review of Plaintiff's records were completed in July of 2006 (prior to Dr. Neibur's treatment) and June of 2007 (just three months after treatment with Dr. Neibur began), the consulting physicians also did not have access to or review the majority of Dr. Neibur's records, including but not limited to the functional assessment completed by Dr. Niebur on April 30, 2009. Like Plaintiff's other treating physicians, Dr. Niebur opined that Plaintiff was markedly limited in multiple areas but her opinions were rejected (apparently wholesale) by the ALJ in favor of two consulting psychologists' reports dated May 31, 2007 and June 12, 2007.[3]

Again, the ALJ failed to adequately explain the weight given to Dr. Niebur's opinions as required by *Blakely*, particularly in light of the fact that the consulting psychologists completed their assessments without access to or review of Plaintiff's

---

[3] In another apparent error, the ALJ largely accepted the reports of the two consulting psychologists yet inexplicably failed to adopt- or even address- one of the opinions that Plaintiff could not perform work under time or production quotas. (Tr. 1061). Although Defendant argues that other evidence in the record did not support time/production quotas, this Court cannot find the existence of substantial evidence to support the ALJ's opinion when the ALJ does not appear to have considered the issue at all.

11

treating psychiatrist's records and opinions. In his rejection of Dr. Niebur's opinions as "unsupported" by records, the ALJ repeatedly refers to Dr. Niebur (whose first name is Melinda) with male pronouns, and discredits Dr. Niebur's opinions in part because the ALJ believed that she "does not note claimant's significant noncompliance with medication or its effect on her functioning." (Tr. 29). In fact, Dr. Niebur's clinical records actually note and discuss Plaintiff's non-compliance on multiple occasions, such that the ALJ's stated basis for discrediting her opinion was either weak or mistaken entirely.

### D. Credibility Assessment and Evaluation of Pain

Plaintiff's third statement of error finds fault with the ALJ's conclusion that her testimony was not entirely credible. Specifically, Plaintiff claims that the ALJ failed to consider all the factors listed in 20 C.F.R. § 404.1529 and Social Security Ruling 96-7p.

The ALJ found that "the claimant's medically determinable impairments could reasonably be expected to cause the alleged symptoms; however, the claimant's statements concerning the intensity, persistence and limiting effects of these symptoms are not credible to the extent they are inconsistent with the above residual functional capacity assessment." (Tr. 28-29).

A disability claim can be supported by a claimant's subjective complaints, as long as there is objective medical evidence of the underlying medical condition in the record. *Jones v. Comm'r of Soc. Sec.*, 336 F.3d at 475. However, "an ALJ is not required to accept a claimant's subjective complaints and may properly consider the credibility of a claimant when making a determination of disability." *Id.* at 476. (citations omitted). An ALJ's credibility assessment must be supported by substantial evidence, but "an ALJ's findings based on the credibility of the applicant are to be accorded great weight and

deference, particularly since an ALJ is charged with the duty of observing a witness's demeanor and credibility." *Walters v. Comm'r of Soc. Sec.*, 127 F.3d 525, 531 (6th Cir. 1997). Further, a credibility determination cannot be disturbed "absent a compelling reason." *Smith v. Halter*, 307 F.3d 377, 379 (6th Cir. 2001). Thus, it is proper for an ALJ to discount the claimant's testimony where there are contradictions among the medical records, her testimony, and other evidence. *Warner v. Comm'r of Soc. Sec.*, 375 F.3d at 392.

This case presents a close issue as to whether substantial evidence supports the ALJ's credibility determination, despite the great deference generally provided to an such an assessment. Plaintiff takes significant pain medications as well as psychotropic medications for her multiple diagnoses. One of the consulting physicians upon whom the ALJ relied to determine Plaintiff's RFC determined that Plaintiff's symptoms were "consistent with the total evidence." (Tr. 1082). In her work rehabilitation attempt in 2007, Plaintiff's attendance was noted to be "problematic" since she frequently missed work for medical reasons and was often late. However, she was noted to her credit, to have "stayed late or arrived early" to make up for missed time, and was evaluated as giving good effort and cooperation. (Tr. 835). Dr. Niebur also specifically noted that Plaintiff would have difficulty in being reliable, and Dr. Blatman also opined that she would miss at least four work days per month.

The ALJ does not appear to have taken into consideration the fact the extent to which Plaintiff's mental and physical impairments might impact her work attendance, despite the referenced evidence in the record. Instead, the ALJ appears to have held Plaintiff's 16 weeks of work (during which she missed 12 days and was often late) as

13

evidence that undercut rather than bolstered Plaintiff's credibility. (Tr. 29). Given this ambiguity and the need to remand for other reasons as stated, the Defendant will be directed to reconsider evidence of Plaintiff's credibility in light of the record as a whole.

### E. Error in Reliance on Vocational Expert Testimony

The Vocational Expert (VE) testified that Plaintiff could perform three unskilled sedentary jobs based upon the RFC determined by the ALJ. However, the VE also testified that all three of the listed jobs would require completion of a 90-day probationary period during which Plaintiff would not be permitted to miss any days of work, and following which Plaintiff would not be permitted to miss more than three days per month. ((Tr. 1291-1292). As stated, Plaintiff missed 12 days, or slightly more than 3 days per month, during her work rehabilitation attempt over a 16-week period in 2007. Sixteen weeks is equivalent to just 80 work days, presumably less than the 90-day probationary period during which Plaintiff would be permitted to miss no days at all. Defendant argues that only 5 of Plaintiff's 12 absences were due to "documented" medical situations, while the remaining 7 absences were for other reasons including "undocumented medical reasons." (Tr. 835). As discussed above, however, the failure of the ALJ to discuss this potential limitation or explain his rejection of it, as well as the failure to discuss whether or not Plaintiff requires strict time and/or production quotas, renders his reliance on the VE testimony somewhat problematic.

Even more concerning is the fact that the VE testified that Plaintiff could perform just three unskilled jobs based on her limitations, but then incorrectly identified the three jobs as consistent with the "unskilled" sedentary level in the *Dictionary of Occupational Titles* (DOT). (Tr. 1287). In fact, none of the three jobs are consistent with the DOT

14

classification because all three require a skill level higher than the "unskilled" classification.

In her request for review before the Appeals Council, Plaintiff brought the VE's error to the agency's attention and attached the DOT description (Tr. 1255).

### F.  Remand Not Reversal Required

The Court is particularly cognizant in this case of the length and complexity of administrative proceedings in this case and finds no joy in causing that record to grow through further remand to the administrative agency.  Nonetheless, in light of the errors discussed above, remand is unavoidable.  Despite Plaintiff's significant mental and physical limitations, reversal for an award of benefits is not appropriate without further review, in part precisely because of the complexity of the record and diversity of medical opinions contained therein.   The Court can take only small comfort in the fact that on remand, the period under review is limited in time to dates after November 2006, given Plaintiff's failure to challenge prior findings that 1) *res judicata* applies to any time prior to April 7, 2006, and 2) Plaintiff engaged in substantial gainful activity from March to November 2006.

### III.  Conclusion and Recommendation

A sentence four remand under 42 U.S.C. §405(g) provides the required relief in cases where there is insufficient evidence in the record to support the Commissioner's conclusions and further fact-finding is necessary.  *See Faucher v. Secretary of Health and Human Servs.,* 17 F.3d 171, 174 (6th Cir. 1994) (citations omitted).  In a sentence four remand, the Court makes a final judgment on the Commissioner's decision and "may order the Secretary to consider additional evidence on remand to remedy a defect

15

in the original proceedings, a defect which caused the Secretary's misapplication of the regulations in the first place." *Faucher,* 17 F.3d at 175.

For the reasons explained herein, **IT IS RECOMMENDED THAT**:

1.  The decision of the Commissioner to deny Plaintiff DIB benefits be **REVERSED** and this matter be **REMANDED** under sentence four of 42 U.S.C. §405(g);

2.  On remand, the ALJ be instructed to: (1) carefully review evidence of Plaintiff's allegations of additional limitations based on evidence of fibromyalgia and/or carpal tunnel syndrome; (2) properly review the medical evidence and give specific reasons for the weight given to the opinions of Plaintiff's treating physicians;

3.  As no further matters remain pending for the Court's review, this case be **CLOSED.**

 /s Stephanie K. Bowman
Stephanie K. Bowman
United States Magistrate Judge

16

**UNITED STATES DISTRICT COURT**
**SOUTHERN DISTRICT OF OHIO**
**WESTERN DIVISION**

| | |
|---|---|
| MARY L. CHAPPEL, | Case No. 1:09-cv-865 |
| Plaintiff, | Weber, J. |
| | Bowman, M.J. |
| v. | |
| MICHAEL J. ASTRUE, COMMISSIONER OF SOCIAL SECURITY, | |
| Defendant. | |

**NOTICE**

Pursuant to Fed. R. Civ. P. 72(b), any party may serve and file specific, written objections to this Report & Recommendation ("R&R") within **FOURTEEN (14) DAYS** of the filing date of this R&R. That period may be extended further by the Court on timely motion by either side for an extension of time. All objections shall specify the portion(s) of the R&R objected to, and shall be accompanied by a memorandum of law in support of the objections. A party shall respond to an opponent's objections within **FOURTEEN (14) DAYS** after being served with a copy of those objections. Failure to make objections in accordance with this procedure may forfeit rights on appeal. *See Thomas v. Arn,* 474 U.S. 140 (1985); *United States v. Walters,* 638 F.2d 947 (6th Cir. 1981).